In re Jose A. FERNANDEZ, Debtor(s).

**William ROEMELMEYER, Trustee, Plaintiff,**

v.

**Jose A. FERNANDEZ, Defendant.**

**Bankruptcy No. 85–00746–BKC–TCB.**
**Adv. No. 85–1235–BKC–TCB–A.**

United States Bankruptcy Court, S.D. Florida.

Dec. 11, 1985.

Max M. Hagen, P.A., N. Miami Beach, Fla., for defendant/debtor.

Steven H. Friedman, Miami, Fla., for plaintiff/trustee.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Bankruptcy Judge.

The trustee opposes the debtor's discharge in six counts under 11 U.S.C. § 727(a)(2),(3),(4), and (5). The debtor has answered and the matter was tried on November 27.

The pertinent facts are bizarre and it is understandable that the trustee and the creditors who have spurred him into action have thrown the book at the debtor. However, I do not agree with the trustee that the debtor's testimony is "two surreal to be believed." It is certainly possible that this debtor has defrauded his creditors of $4.6 million as they suspect, but I conclude that plaintiff has failed to carry his burden of proving any of his charges against the debtor.

The debtor is a wholesale and retail diamond dealer who did business through a corporation of which he was the chief operating officer, the sole shareholder and, other than his daughter who served as his bookkeeper, the only employee. When he put himself and his corporation into bankruptcy on April 8, 1985, the corporation showed four major accounts receivable:

| | |
|---|---|
| Brillantes | $2,341,007 |
| Grabados | 201,891 |
| Sociedad Minera | 322,618 |

| | |
|---|---|
| Gemdiax | $ 852,119 |
| | $3,717,635 |

Brillantes is a Spanish corporation. It went out of business early in 1985 and its principal has vanished without a trace. Two elderly aunts of the debtor's wife each appear to be 49% shareholders.

Grabados is a Colombian corporation in Medellin in the business of making key chains. The debtor's transactions were with an individual, Alvarez, who cannot now be located and none of the officers, directors or principals of Grabados has ever transacted business with the debtor.

Sociedad Minera is a Colombian corporation in Bogota. The debtor's contact, Pachon, was killed in a helicopter crash in December 1984 and the corporation is in bankruptcy.

Gemdiax is a New York corporation which went out of business early in 1985 after the disappearance of its principal, Kiss.

With reference to Brillantes, the debtor has explained that he had done business for several years with an individual Gonzalez, in Madrid. Gonzalez who always paid in cash and frequently paid in advance, had become his best customer. In January 1984, while the debtor was in Madrid, Gonzalez, who was a citizen of Venezuela, asked the debtor's assistance in enlisting two Spanish citizens to serve along with Gonzalez' Spanish attorney as the "founders" of Brillantes, which he wished to incorporate. Spanish law precluded him from being a founding shareholder. The debtor persuaded his wife's two elderly aunts to volunteer. There is no evidence that they or the debtor has received any benefit from the account owed by Brillantes to the debtor nor is there any indication that the debtor has any connection with Gonzalez' lawyer who served as the third "founder." The debtor went to Madrid and evidently made all reasonable efforts to trace Gonzalez. Neither Gonzalez' attorney nor the debtor was able to do so.

Similarly, the debtor went to Medellin and to Bogota in an effort to collect his accounts with Grabados and Sociedad Minera. Again, he appears to have made all reasonable efforts without any success.

With reference to Gemdiax, the debtor went to New York, where he learned that Kiss had vanished owing a number of other diamond dealers, none of whom had been able to trace him or effect any recovery.

In no instance, has there been any showing that the explanation offered or the efforts made were a mere subterfuge and that in fact the debtor is a fellow conspirator of the vanished clients or that his claim that he sold diamonds on open account to each of these four customers is fictitious. On the contrary, the paper records furnished tend to support the debtor's account, and I find it difficult to believe that he has manufactured this evidence. The testimony of his daughter also tends to support the debtor's account, which is not of course surprising. However, this young lady has worked with him from the beginning as his bookkeeper. During that interval she earned a BA degree and a masters degree in accounting. Neither her testimony nor her demeanor suggests that she is a fellow conspirator protecting her father or that she is so gullible that she didn't know what he was up to.

The wholesale trading in diamonds is a business based almost entirely on personal trust. This debtor's diamond suppliers and now his major creditors extended his corporation over $2 million credit for diamonds furnished to the corporation without collateral, without a personal guarantee by the debtor or his wife, without learning his personal residence, or requiring any other personal information. It is not at all remarkable that this debtor sold extremely valuable diamonds to individuals on open account without collateral and with only sketchy information concerning his customers. In each instance, his business dealings have been completely satisfactory some time before he found himself with an apparently uncollectible account receivable. This debtor had done a total of some $6 million worth of business during 1983 and

1984 and had experienced no previous difficulties with any of these accounts.

Count 3 charges under § 727(a)(5) that: "the debtor has failed to explain satisfactorily before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."

I have no reason on the record before me to reject the debtor's explanation of his failure to collect the foregoing accounts, which is the only "loss of assets" offered as a predicate for this charge.

██ Count 1 alleges under § 727(a)(2)(A) that the debtor's transactions with Brillantes constitute a transfer or a concealment of the debtor's property within the year before bankruptcy:

"with intent to hinder, delay, or defraud a creditor."

Of course, fraudulent intent may be inferred from circumstantial evidence, but the fraudulent intent required to prevent discharge:

"must be an actual fraudulent intent as distinguished from constructive intent."

*Collier on Bankruptcy* ¶ 727.02[3] n. 6 (15th ed. 1985). The trustee relies on some early Florida cases which hold that a fraudulent transfer under the State statute may be proved by showing conduct that delays a creditor or that has the effect of defrauding a creditor, even though there is no basis to infer an actual or corrupt intent to hinder, delay or defraud anyone. Those cases are not applicable here. I find no basis to infer an actual fraudulent intent on the part of this debtor in his dealings with Brillantes.

██ Count 5 is also bottomed on § 727(a)(2)(A), but it rests upon the debtor's conveyance in January 1985 to a corporation completely owned by him and the simultaneous execution to a local bank of a mortgage upon that property to secure a personal loan. At that time, there was an outstanding, unrecorded agreement for deed in which the debtor had contracted to sell a part of the property in question to an individual for monthly payments of $146

payable over a four-year period beginning in June 1981. I am asked to infer that the debtor conveyed title and mortgaged the property in order to defraud this vendee. However, the evidence before me is that the vendee never completed or tendered the total purchase price and never made a demand for delivery of a deed. The vendee has since given a quit claim deed to the mortgagee bank extinguishing his claim. The bank required that title be placed in the corporation and the bank knew of the outstanding agreement for deed. The debtor was ready, willing and able to deliver unencumbered title to this vendee if and when the vendee completed his purchase. I find no fraudulent transfer in this transaction.

██ Count 4 alleges a failure under § 727(a)(3) to keep records:

"from which the debtor's financial condition or business transactions might be ascertained unless such act or failure to act was justified under all of the circumstances of the case."

The trustee relies upon the testimony of a CPA employed some five months after bankruptcy to investigate certain specific transactions. This witness was never given all the voluminous records retained by the trustee nor did the trustee retain all of the business records left by the debtor in the secured premises of his corporation when those premises were turned over to the trustee. It is undisputed, however, that the debtor's corporation maintained no general ledgers, general journals, or cash receipt and disbursement ledgers.

The CPA has testified that without the foregoing ledgers and journals and without an inventory (which he was unable to locate) it is not possible to determine what was bought, what was sold and what was on hand as of the date of bankruptcy, and he could not determine or verify with any acceptable accuracy the loss sustained by the debtor's corporation.

As has already been stated, the debtor's accounting records were maintained by his daughter. They were originally established by an independent CPA. She has

explained the system established by him, and the records in the trustee's custody appear to reflect all of the debtor's business transactions, although perhaps in an unconventional form. The trustee's accountant never made any inquiries of either the debtor's bookkeeper/daughter nor the debtor's independent CPA. He was never furnished the monthly operating statements prepared and retained by the business. There was and is an adequate inventory record. I find that the records maintained and delivered to the trustee by the debtor were adequate for the ascertainment of the debtor's financial condition and his business transactions. It is possible that the trustee's CPA would have reached the same conclusion had he asked a few questions and been furnished all the records made available to the trustee.

Count 3 is based upon § 727(a)(4) which denies a discharge to a debtor who: "knowingly and fraudulently, in or in connection with a case (A) made a false oath or account."

The allegation in this count, paragraphs 18 and 19, are mere general, sweeping conclusions that the debtor "has made false statements." The trustee has attempted to prove that in answering a specific question during his oral examination under oath at the creditors' meeting of June 3, 1985, the debtor gave a false answer. The debtor has quite justifiably responded that he has been unable to anticipate the basis for this general allegation and, therefore, has been unable to counter it. I agree. Allegations of fraud must be made in sufficient detail to identify the transaction relied upon. Count 3 does not state a cause of action and I have not, therefore, considered whether the answer was knowingly false or whether the correct information was subsequently furnished, a defense available under this statute.

The trustee's remaining count, count 6, has been abandoned.

As is required by B.R. 9021(a), a separate judgment will be entered dismissing the complaint with prejudice. Costs may be taxed on motion.